# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KEITH R. STALEY,                    )
                                    )
                 Plaintiff,         )
                                    )
        v.                          )       1:14CV214
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,                           )
                                    )
                 Defendant.         )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Keith R. Staley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 11, 13). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and SSI on November 19, 2010 (protective filing date), alleging a disability onset date of June 20, 2003. (Tr. 113-19.) The Social Security Administration denied Plaintiff's DIB application because he had not worked long enough to qualify for

benefits under that program (Tr. 63-66), and Plaintiff did not appeal that denial. Upon denial of Plaintiff's SSI application initially (Tr. 52-62, 67-70) and on reconsideration,[1] Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 74). Plaintiff and his non-attorney representative attended the hearing. (Tr. 24-51.) By decision dated September 28, 2012, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 9-23.) On January 8, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. Plaintiff] has not engaged in substantial gainful activity since November 19, 2010, the application date.
>
> 2. [Plaintiff] has the following severe impairments: bipolar disorder, major depressive disorder, impulse control disorder, mood disorder, unable [sic] to focus, mood swings and paranoid [sic].
>
> . . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .

---

[1] The record does not contain any documents reflecting the denial of Plaintiff's SSI claim at the reconsideration stage, but the ALJ indicated in his decision that the Social Security Administration denied Plaintiff's SSI claim on reconsideration on April 19, 2011. (Tr. 12.)

4. . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non[-]exertional limitations: limited to short and simple instructions; limited to a small variety of tasks at a semi-rapid pace; limited social interaction with coworkers, supervisors and the public; limited to occasional routine changes in the work setting; limited to simple, routine, repetitive tasks.

. . . .

5. [Plaintiff] is capable of performing past relevant work as a landscaper, production worker, and a handyman. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC].

. . . .

6. [Plaintiff] has not been under a disability, as defined in the [] Act, since November 19, 2010, the date the application was filed.

(Tr. 14-22 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal

3

standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

4

upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a

---

[2]    The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to correctly apply the regulatory factors at step three of the [SEP] when he found that

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

[Plaintiff's] affective and personality disorders did not meet the requirements as set forth in Listing 12.04 and Listing[] 12.08" (Docket Entry 12 at 3);

(2) "[t]he ALJ erred by affording greater weight to the non-treating, non-examining psychologist" (id. at 8);

(3) "[t]he ALJ erred in making [an] [RFC] determination that was not supported by the evidence of record" (id. at 13); and

(4) "[t]he ALJ erred by failing to provide substantial evidence to support his finding that [Plaintiff] did past relevant work ("PRW"), and alternatively, if [Plaintiff] did PRW, the ALJ does not provide the required specific findings regarding the mental demands of the PRW and the subsequent [s]tep [f]ive analysis lacks the testimony of a vocational expert" (id. at 14).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-17.)

## 1. Evaluation of Listings and Medical Source Opinions[6]

In Plaintiff's first issue on review, he challenges the ALJ's step three determination that Plaintiff's mental impairments did not meet or equal the criteria of Listings 12.04 or 12.08. (Docket Entry 12 at 3-8.) Plaintiff alleges that, had the ALJ considered the record as a whole, rather than "selectively cit[ed] the evidence of record that support[ed] his position" (id. at 5), he

---

[6] As explained in more detail below, Plaintiff's first and second issues on review warrant consideration together.

would have found, when considering the "B criteria" of those listings, that Plaintiff suffered marked limitation in activities of daily living ("ADLs"), social functioning, and concentration, persistence, or pace and, thus, met the requirements of both Listings 12.04 and 12.08 (id. at 5-8).

Pursuant to Listings 12.04B and 12.08B, Plaintiff must show that his mental impairments:

B. Result[] in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04B, 12.08B.[7] Here, the ALJ found that Plaintiff's mental impairments caused no limitation in ADLs, moderate limitation in social functioning and concentration, persistence, or pace, and no episodes of decompensation. (Tr. 15.) Although the evidence of record does

---

[7] In this context, to qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C); see also 20 C.F.R. § 416.920a(c)(4) (explaining that "marked" represents the fourth-highest of five levels, below "extreme," but above "none, mild, [and] moderate"). Decompensation here refers to "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(4). "[R]epeated episodes of decompensation, each of extended duration[,] . . . means three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks." Id.

9

not compel a finding that Plaintiff's mental impairments met or equaled either Listing 12.04 or 12.08, substantial evidence does not support the ALJ's "B criteria" findings, as explained more fully below.

For purposes of formulating Plaintiff's RFC, the ALJ gave "great weight" to the opinions of state agency psychologist Dr. Henry Perkins as "consistent with the record as a whole" (Tr. 20); however, Dr. Perkins's "B criteria" assessments conflict with the ALJ's parallel findings at step three (compare Tr. 15, with Tr. 57). For example, Dr. Perkins opined that Plaintiff's mental impairments caused moderate limitation in ADLs and resulted in Plaintiff experiencing one to two episodes of decompensation. (Tr. 57.) Although the ALJ stated that he gave "great weight" to Dr. Perkins's opinions (Tr. 20), the ALJ provided no explanation as to why he apparently rejected Dr. Perkins's "B criteria" assessments regarding ADLs and decompensation (see Tr. 14-23). The ALJ's failure to explain this inconsistency warrants remand. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must build an accurate and logical bridge from the evidence to his [or her] conclusion."); see also Conkle v. Commissioner of Soc. Sec., No. 2:14-CV-0180, 2015 WL 1046197, at *6 (S.D. Ohio Mar. 10, 2015) (unpublished) (finding no error where ALJ "discussed the opinions of the state agency reviewers [and] . . . adopted some of their findings, but modified others in light of additional evidence

. . . [and] provided a rationale for each of his conclusions"
(emphasis added)); Ghini v. Colvin, No. 13–cv–02790–REB, 2015 WL
1064228, at *5 (D. Colo. Mar. 9, 2015) (unpublished) ("[W]hile the
ALJ gave these opinions 'significant weight,' he stated plainly
that he did not afford them greater weight because he found them
partially inconsistent with the medical evidence, a conclusion
which his opinion substantiates." (emphasis added)); McMillian v.
Colvin, No. 7:13–cv–19, 2014 WL 931950, at *7 (W.D. Va. Mar. 10,
2014) (unpublished) (holding that "substantial evidence support[ed]
the ALJ's . . . decision not to adopt [a treating physician's]
proposed limitations whole-cloth . . . [where] the ALJ . . .
reviewed carefully [the treating physician's] opinion and . . .
explain[ed] why [the ALJ gave] great weight to much of [the]
opinion, and why certain aspects of that opinion were not entitled
to great weight." (emphasis added)).

In addition to the above-described, material failure-of-
explanation regarding Dr. Perkins's opinions, the ALJ also
committed step-three error by failing to support his "B criteria"
findings with any other substantial evidence. For example, the ALJ
cited no basis for concluding that Plaintiff had no limitation in
ADLs. (See Tr. 15.) At the hearing, although Plaintiff testified
that he draws in coloring books, reads the Bible, and watches TV
(Tr. 40), that he can shower and dress himself and fix simple meals
(Tr. 46), and that he "clear[s] up behind [him]self" (Tr. 47), he

11

also testified that his wife took care of him (Tr. 28), that he did not have a driver's license because of medication side effects (Tr. 32), that he stays in his house (Tr. 40), and that he does not grocery shop with his wife or go to church very often because he gets into conflict with others (Tr. 47, 48).  Similarly, on a Function Report, Plaintiff indicated that he does not cook (Tr. 160), does not perform any house work or yard work (Tr. 161), does not handle money or bills (id.), and has problems following instructions (Tr. 163).  Absent contradiction, that evidence establishes that Plaintiff has, at a minimum, some limitation in his ability to complete ADLs caused by his mental impairments.

The ALJ also failed to adequately explain his findings of moderate limitation in social functioning and concentration, persistence, or pace.  With regard to social functioning, the ALJ observed that Plaintiff reported having "problems getting along with family, friends and neighbors," that he "does not get along with other people and their attitude," and that "he could not be around people, because when he gets mad he wants to hurt someone." (Tr. 15.)  That evidence, standing alone, supports a finding of a marked limitation in social functioning, as it demonstrates that Plaintiff's mental impairments "interfere seriously with [his] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C).  The ALJ did not rely on any other record evidence to

12

counterbalance that evidence. (Tr. 15.) Although the record may contain evidence that could support a finding of <u>moderate</u> limitation in social functioning (<u>see, e.g.</u>, Tr. 281, 283-84), the ALJ here did not reference any such evidence to support his finding with respect to social functioning. (Tr. 15.) The ALJ must cite to sufficient evidence to build "'an accurate and logical bridge from the evidence to [the ALJ's] conclusions,'" <u>Joyce v. Astrue</u>, No. 1:06CV27, 2009 WL 313345, at *3 (M.D.N.C. Feb. 5, 2009) (unpublished) (quoting <u>Blakes ex rel. Wolfe v. Barnhardt</u>, 331 F.3d 565, 569 (7th Cir. 2003)).

The same problem exists regarding the ALJ's finding of moderate limitation in concentration, persistence, or pace. The ALJ reported Plaintiff's statements that "he does not finish things that he starts," that "he cannot focus to follow written instructions," and that "he does not pay bills, handle a savings account or use a checkbook." (Tr. 15.) That evidence, in and of itself, tends to establish a <u>marked</u> limitation in concentration, persistence, or pace, and the ALJ does not expressly rely on any other evidence to support his more limited finding. Again, the record may contain evidence that Plaintiff possesses a greater ability to concentrate (<u>see, e.g.</u>, Tr. 49, 219, 270, 284), but the ALJ did not cite to any such evidence or conduct any analysis to resolve conflicts in the evidence (Tr. 15).

In Plaintiff's second issue on review, he challenges the ALJ's decision to afford Dr. Perkins's opinions more weight than the opinions of consultative examiner Dr. Richard L. Spencer. (Docket Entry 12 at 8-13; see also Tr. 53-62, 266-72.)[8]   As Plaintiff

_____

[8] Plaintiff also argues that the ALJ erred when he found Dr. Perkins's opinions "consistent with whole record" (id. at 11 (citing Tr. 20)), because Dr. Perkins issued his opinion in February 2011, and could "not [have] review[ed] the entire record" (id. (citing Tr. 53-62)).  Plaintiff's suggestion that Dr. Perkins's opinions should not have received great weight because Dr. Perkins provided such opinions prior to the record's completion runs counter to logic.  State agency consultants who provide RFC determinations at the initial and reconsideration levels of the claims process necessarily give their opinions prior to completion of the record, and their opinions would not, under Plaintiff's reasoning, ever warrant great weight.  Moreover, Plaintiff's position contradicts both binding and persuasive authority.  Such authority makes clear that the consistency of state agency consultant's opinions with the record as a whole, including those records post-dating such opinions, constitutes the proper focus of the inquiry. For example, in Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984), as recognized by Plaintiff in his brief (see Docket Entry 12 at 11), the United States Court of Appeals for the Fourth Circuit held that ALJs may rely on the opinions of non-examining physicians when such opinions find consistency with the whole of the record.  Similarly, numerous district court cases within the Fourth Circuit similarly reflect the view that ALJ reliance on non-examining state agency physicians's RFC assessments does not constitute error so long as such opinions find support in the entire record.  See, e.g., Thacker v. Astrue, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) (unpublished) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.  Moreover, there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond [the state agency physician's RFC]." (internal citation omitted)); Bryant v. Astrue, No. 3:08CV719, 2009 WL 6093969, at *9 & n.11 (E.D.Va. Jul. 15, 2009) (unpublished) (affirming ALJ's decision to give non-examining state agency consultants' assessments great weight as "consistent with the actual medical findings and conservative treatment of the claimant's treating physicians, and with [the claimant's] admitted activities of daily living" even though such consultants "did not have the opportunity to observe the claimant or the opportunity to consider additional evidence submitted subsequent to their review of the record"); Bracey v. Astrue, No. 5:07-CV-265-FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (unpublished) (finding no error in ALJ's reliance on state agency consultants' opinions where "treatment notes and clinical findings . . . submitted after the [consultants's] assessments indicate[d] similar complaints and assessments as those reviewed by the . . . consultants" and noting that the ALJ considered the additional evidence, which did "not demonstrate a marked change for the worse in [the] plaintiff's health"); see also Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180, at *2 (July 2, 1996).

points out, the ALJ gave Dr. Perkins's opinions "great weight" and Dr. Spencer's opinions "moderate weight" for exactly the same reason: that such opinions are "consistent with the record as a whole." (Id. at 13 (citing Tr. 20, 21).) Plaintiff thus faults the ALJ for failing to give any distinguishing reasons why Dr. Perkins's opinions warranted more weight than Dr. Spencer's opinions. (Id.) Plaintiff's argument has merit.

On December 8, 2010, Dr. Spencer performed a consultative mental examination of Plaintiff and concluded that Plaintiff had "borderline" intellectual functioning, a "poor" ability to adjust in social and occupational functioning, and a "poor" prognosis. (Tr. 270-72.)[9] Dr. Spencer's foregoing opinions conflict with Dr. Perkins's opinions, in that Dr. Perkins did not find that Plaintiff suffered from a borderline intellect (or any other organic mental disorder) at step two, found only moderate limitations in Plaintiff's social functioning at step three, and assessed at most moderate limitations in mental work-related functioning when formulating Plaintiff's mental RFC. (See Tr. 56, 57, 58-60.) The ALJ, however, failed to explain why Dr. Perkins's opinions on those

---

[9] Although the ratings scale for the "B criteria" does not utilize the term "poor," see 20 C.F.R. § 416.920a(c)(4) (describing "five-point scale" of "[n]one, mild, moderate, marked, and extreme"), that term leaves open the possibility that Dr. Spencer intended to find the equivalent of marked limitations in Plaintiff's ability to function socially and occupationally. See Fallstead v. Colvin, No. C 12-00156 CRB, 2013 WL 5426223, at *5 (N.D. Cal. Sept. 27, 2013) (unpublished) (noting that treating physician's opinion used "a dissimilar metric, evaluating [the claimant's] social functioning and concentration abilities on an 'unlimited' to 'poor' scale" and observing that "[w]hether these classify as a 'marked' restriction is open to interpretation").

subjects warranted <u>greater</u> weight than Dr. Spencer's opinions. (<u>See</u> Tr. 20-21.)

Although Defendant cites treatment records and portions of Plaintiff's hearing testimony that support the ALJ's decision to accord Dr. Spencer's opinion only moderate weight (<u>see</u> Docket Entry 14 at 12-13 (citing Tr. 43-45, 284), the ALJ neither referenced any of that evidence, nor cited any other justification beyond his boilerplate conclusion that he found Dr. Spencer's opinions "consistent with the record as a whole" (Tr. 21). The Court cannot consider post-hoc rationalizations. <u>See</u> <u>Anderson v. Colvin</u>, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, C.J.) (citing <u>Securities & Exch. Comm'n v. Chenery Corp.</u>, 332 U.S. 194 (1947)). To the contrary, <u>Chenery</u> limits the Court to reviewing the rationalizations initially put forth by an administrative agency. <u>Id.</u>[10] Accordingly, the Court also should remand for proper resolution of the conflict between the conclusions of Dr. Perkins and Dr. Spencer.

## 2. RFC, PRW, and Lack of Vocational Expert Testimony

The recommendation of remand for reconsideration of Plaintiff's mental limitations may result in the adoption of a different RFC, thus mooting Plaintiff's third assignment of error,

---

[10] Although the Court uses a harmless error standard of review, <u>Dyrda v. Colvin</u>, 47 F.Supp.3d 318, 326 (M.D.N.C. 2014) (Schroeder, J.), the Court cannot "parse the administrative transcript and make several dispositive findings of fact that the ALJ did not make," <u>Anderson</u>, 2014 WL 1224726, at *4.

16

which attacks in largely conclusory fashion the ALJ's RFC determination (see Docket Entry 12 at 13-14), as well as Plaintiff's fifth assignment of error, which contests the ALJ's reliance on Rule 204.00 of the Medical-Vocational Guidelines, in lieu of obtaining testimony from a vocational expert (see id. at 17). Although the recommendation to remand might also moot Plaintiff's fourth (and other remaining) assignment of error, i.e., that the ALJ improperly found Plaintiff capable of performing his PRW (see id. at 14-17), the ALJ made significant errors in his analysis of Plaintiff's ability to perform his PRW that warrant further discussion.

In regards to PRW, Plaintiff asserts that he last worked in 1999, and that he intermittently served time in prison between 1999 and 2008. (Id. at 15 (citing Tr. 35, 127-29, 268).) Additionally, Plaintiff emphasizes that his earnings records show no work income in the last 15 years that qualified as substantial gainful activity ("SGA") and that the state agency disability examiner found on initial review that Plaintiff had no PRW. (Id. at 15-16 (citing Tr. 60, 125-29).) Plaintiff further argues that the ALJ failed to make specific findings of fact regarding the mental demands of Plaintiff's prior work in violation of 20 C.F.R. §§ 416.920(e) and 416.960, and that the ALJ also confused matters by finding Plaintiff "capable of performing his [PRW] as a landscaper, production worker, and a handyman," and then supported that finding

17

by remarking that Plaintiff "was doing housekeeping work until he had a conflict with the supervisor and then quit that job" and that Plaintiff "had no problems with doing the [housekeeping] job, so therefore he would be able to do his [PRW]." (Id. at 16-17 (citing Tr. 21 (emphasis added)).)

The Commissioner's regulations define PRW as "work that [a claimant has] done within the past 15 years, that was [SGA], and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). Generally, the Commissioner considers earnings in the 15 years prior to the disability adjudication at issue, Social Security Ruling 82-62, Titles II and XVI: a Disability Claimant's Capacity to Do Past Relevant Work, in General, 1982 WL 31386, at *2 (1982) ("SSR 82-62"), which in the instant case would mean a period from September 28, 1997, to September 28, 2012. In evaluating whether work activity qualifies as SGA, the amount of earnings represents the "primary consideration." 20 C.F.R. § 416.974(a)(1). To assist in determining whether a claimant's past work constitutes SGA, the regulations establish earnings thresholds below which work generally does not constitute SGA. See 20 C.F.R. § 416.974(b)(2).

Plaintiff's earnings records, as the "primary consideration," 20 C.F.R. § 416.974(a)(1), constitute the starting point of the PRW analysis; however, the administrative record does not contain earnings information covering the entire 15-year window in this

18

case. Those records show only Plaintiff's total earnings per year from 1985 to 1999 and earnings by employer for the years 1996 to 2000, but no earnings information whatsoever from 2001 to 2012. (Tr. 128-29.) Moreover, for the years 1997, 1998, 1999, and 2000, Plaintiff earned $1,189.39, $.00, $1,544.60, and $.00, respectively. (Id.) Thus, Plaintiff clearly did not have any PRW in either 1998 or 2000 and, lacking information regarding the length of time Plaintiff held his prior jobs (as discussed in more detail below), the record leaves open the possibility that his 1997 and 1999 earnings fell below the presumptive monthly income levels for SGA. See https://www.socialsecurity.gov/oact/cola/sga.html (1997 - $500; 1999 - first half $500, second half $700) (last visited July 29, 2015); see also Bernal v. Colvin, No. 1:13-cv-0707-BAM, 2015 WL 1012441, at *7 (E.D. Cal. Mar. 6, 2015) (unpublished) ("Either Plaintiff worked solely as a hand packager for a little over one month, which may be an insufficient amount of time for the ALJ to reasonably determine that the job lasted long enough for Plaintiff to have learned it; or Plaintiff worked as a hand packager for two months or longer, making his average monthly income below SGA levels. Perhaps both of these statements are accurate, or perhaps both statements are incorrect. The Court simply cannot make a rational interpretation based on such vague evidence.").

19

In addition to the lack of evidence that Plaintiff's past work qualified as PRW from an earnings standpoint, examination of the record evidence regarding the three jobs the ALJ cited as PRW further underscores the errors in the ALJ's PRW finding. In regards to Plaintiff's past work as a "handyman," the record does not provide much clarification regarding the particulars of that job. At one point, Plaintiff referred to his prior <u>housekeeping</u> work as a "handyman" position. (<u>See</u> Tr. 144.) Assuming that the "handyman" and "housekeeper" job constitute the same position, in 1997, Plaintiff performed work for "North Carolina Hotel Associates," which an earlier record in 1996 further identified as the "Days Inn - Winston-Salem." (Tr. 128.) Plaintiff testified at the hearing that he worked as a <u>housekeeper</u> at the Days Inn for three weeks in 1999 and quit after a conflict with his employer. (Tr. 33.)[11] Although the record contains no information regarding the hourly wage Plaintiff earned as a housekeeper, his average weekly hours, or the actual dates of his employment in 1997,[12] even assuming he earned the federal minimum wage in effect as of September 1, 1997 ($5.25 per hour), <u>see</u> www.dol.gov/whd/minwage/coverage.htm (last visited July 14, 2015), total earnings

---

[11] No earnings records exist for Plaintiff for the Days Inn in 1999 and thus Plaintiff appears to have misremembered the dates of his employment with that employer. (Tr. 128-29.)

[12] Plaintiff indicated on a Work History Report that he "only remember[ed] the names of the places [he] work[ed]" and did "not remember when, how much [he] made or what [he] did." (Tr. 154.) Lacking even the dates of this employment, the record does not conclusively establish that this employment even occurred within the 15-year PRW window, which began on September 28, 1997.

of $1,189.39 would only represent approximately five and a half weeks of full-time work (i.e., 40 hours per week). Doubt exists as to whether five and a half weeks constitutes sufficient time job for Plaintiff to have learned how to perform the handyman/housekeeper job, particularly when the record contains no testimony or other information regarding the duties of that job. See Dictionary of Occupational Titles, § 321.137-010, 1991 WL 672778 (G.P.O. 1991) (describing "Housekeeper" position as having Specific Vocational Preparation of "Level 6", i.e., workers generally spend over one year and up to and including two years to learn to perform job). Similarly, because the record lacks details of the handyman/housekeeping job's duties, the Court cannot trace the ALJ's reasoning regarding whether Plaintiff's mental RFC accommodates that job. In other words, the record neither supports the initial determination that Plaintiff's housekeeping/handyman job constituted PRW, nor the conclusion that Plaintiff, despite his mental limitations, remains able to perform that work.

The ALJ's conclusions regarding Plaintiff's ability to perform his prior work as a landscaper and a production worker find even less support in the record. (Tr. 21.) Plaintiff indicated that he did landscaping work for the City of Winston-Salem (Tr. 144), but his earnings records only show income from Winston-Salem in 1996, outside the 15-year PRW window. See 20 C.F.R. § 416.965(a) ("[The SSA does] not usually consider that work [a claimant does] 15 years

or more before the time [the SSA is] deciding whether [a claimant is] disabled applies.  A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply.  The 15-year guide is intended to insure that remote work experience is not currently applied.").  Even if the Court found that Plaintiff's landscaping work fell within the 15-year window for PRW, the ALJ failed to elicit any information regarding the duties of that job and thus the Court cannot ascertain whether Plaintiff's mental limitations would permit him to return to such work.

As far as production work, Plaintiff indicated that he performed such work for a company called "Chesapeake" (Tr. 144), but his detailed earnings records for the years 1996 to 2000 do not reflect such an employer (Tr. 128-29.)  Elsewhere in the record, Plaintiff indicated that he worked as a temporary employee for Chesapeake loading pallets for two months in 2011 (Tr. 178), but the record contains no earnings records to substantiate that information (Tr. 128-29).  This conflicting and incomplete information insufficiently supports the ALJ's finding that such work constitutes PRW.  Further, the record contains no information regarding the actual duties of the production worker job and thus does not support the ALJ's conclusion that Plaintiff remained able to perform such work.  See Limerick v. Chater, Civ. Action No. 94-5149, 56 F.3d 77 (table), 1995 WL 324487, at *2 (10th Cir. May

22

31, 1995) (unpublished) ("The ALJ uncritically referred to the occupations of waitress and telephone solicitor as [the] plaintiff's [PRW] . . . . Our record lacks the requisite substantial evidence showing the[] conditions [for PRW] were satisfied by the jobs identified by the ALJ, who made no findings in this regard. The scant evidence about waitressing shows only that plaintiff did it for "2 months" at some unspecified time in the past. As for telephone soliciting, all we know is that plaintiff worked briefly and part-time at two such jobs (four days per week for two months at one and three days per week for four months at the other) sometime in 1983 and/or 1984 . . . .").

In sum, the ALJ's finding that Plaintiff can return to his PRW as a landscaper, production worker, and handyman requires reassessment on remand, even if the re-examination of Plaintiff's mental limitations again results in a finding adverse to Plaintiff at step three and the adoption of an RFC similar to the one previously adopted.

### III. CONCLUSION

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include: (1) reevaluation with proper explanation of whether Plaintiff's mental impairments meet or equal

the criteria of any listed impairment; (2) reconsideration of the opinions of Drs. Perkins and Spencer and an explanation conforming with 20 C.F.R. § 416.927 as to the relative weights afforded each opinion; and (3) redetermination of whether any of Plaintiff's prior work constitutes PRW and, if so, the mental demands of such work and whether Plaintiff retains the RFC to return to such work. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied and Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted in part (i.e., to the extent it requests remand).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 4, 2015